**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GLADYS L. LARBI,** )<br>)<br>　　　**Plaintiff,** )<br>)<br>　　vs. )<br>)<br>**ADVOCATE CHRIST MEDICAL** )<br>**CENTER,** )<br>)<br>　　　**Defendant.** ) | No. 10 C 4623 |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

　　Gladys Larbi, a 63-year-old African-American woman, has sued her former employer, Advocate Christ Medical Center (Advocate Christ), alleging discrimination and retaliation on the basis of race, national origin, color, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (Title VII) and the Age Discrimination in Employment Act, 29 U.S.C. § 623 (ADEA).  Larbi also seeks to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207 (FLSA) and the Illinois Minimum Wage Law, 820 ILCS 105/4a (IMWL). Larbi also seeks punitive damages under Title VII and liquidated damages under the FLSA and the ADEA.  Advocate Christ has moved for summary judgment on all of Larbi's claims.  For the reasons stated below, the Court grants Advocate Christ's motion in part and denies it in part.

**Background**

Larbi is an African-American woman who was born in Ghana in 1949. In 1995, Advocate Christ hired Larbi as a patient care technician at Christ Medical Center. Her duties included preparing patients for bathing, feeding patients, collecting specimens, and drawing blood.

In early 2008, Advocate Christ selected Larbi for its newly-created phlebotomy team, managed and created by Jennifer Connor. As a phlebotomist, Larbi's main duty was to complete blood draws. She was also required to keep a daily log sheet of her patient interactions.

Pursuant to Advocate Christ's meal break policy, an employee is entitled and expected to take a thirty-minute, uninterrupted meal break. The employee is not paid for these meal breaks, and Advocate Christ automatically deducts thirty minutes from an employee's time card each day of work. If an employee is unable to take a meal break, however, Advocate Christ pays her for the time. To notify Advocate Christ that an employee is unable to take a meal break, the time card system displays a "no lunch" button that, if punched, overrides the automatic thirty-minute deduction.

Larbi claims that she was unable to take meal breaks and was never told what to do if she did not get a meal break. She says that Connor never instructed the phlebotomists to punch "no lunch" if they did not take a meal break. Larbi did, however, inform Connor via e-mail and handwritten notes that she was unable to take meal breaks. Nevertheless, after examining Larbi's log sheets, Connor concluded that Larbi had extensive periods of time between blood draws that would have permitted her to take her meal breaks.

Connor testified that Advocate Christ has in place a progressive discipline policy consisting of three levels. At each level, a corrective action notice (CAN) is issued to the employee. After an employee has been issued a third CAN, she may be terminated. According to Connor, however, a supervisor can also issue an employee another type of notice – a performance deficiency notice (PDN) – at any time during a corrective action.

On February 7, 2008, Larbi received a level one CAN from Connor for rude and discourteous behavior and repeated violations of Advocate Christ's venipuncture policy, which allows a phlebotomist a maximum of two attempts to draw blood. The CAN explained that patients had complained about Larbi's behavior and quality of care. For instance, one patient complained that after Larbi had placed a tourniquet on his arm, she left the room to answer her cell phone, answered her cell phone again while performing a venipuncture, and attempted to draw blood three or four times. The CAN detailed another complaint by a patient who alleged that Larbi attempted to draw blood from the patient twice, laughed when stating she missed the vein, stuck the patient a third time, and was asked to leave the room by the patient's mother, who then found a needle left on a tray table. The CAN listed one final patient complaint in which the patient alleged that Larbi stuck her three times despite the fact that the patient told Larbi she was hurting her. The CAN informed Larbi that her behavior needed to be corrected and that "[f]urther violations will result in continued corrective action up to and including termination." Def.'s Ex. 14.

Shortly thereafter, in March 2008, Larbi told Connor that she felt Connor did not like her because she was "foreign." Connor Dep. at 197-98. Connor reassured Larbi

3

that the discussion they were having at the time regarding complaints Connor had received about Larbi was not about whether Connor liked her. Connor documented the comment but did not report it to anyone at Advocate Christ's human resources department.

On June 30, 2008, Larbi received a PDN from Connor explaining that her current level of job performance "[did] not meet expectations." Def.'s Ex. 16. Among other things, the PDN noted that patients had complained about the manner in which Larbi was drawing blood; Larbi was not completing labs in a timely manner; she had not returned several pages; she had large gaps of up to an hour and forty-five minutes between blood draws; and she was seen labeling tubes in the hallway rather than at the bedside. The PDN stated that identification of further performance deficiencies or failure to improve within twelve months of the date of the notice could lead to termination.

On August 29, 2008, Larbi and Connor had a follow-up meeting regarding Larbi's progress on the PDN. Connor concluded that Larbi had made adequate progress and had therefore satisfied the requirements of the PDN. Larbi understood, however, that the PDN was still in effect. Connor thus noted in Larbi's October 7, 2008 performance review that Larbi's PDN remained in effect and that she needed to "sustain in the areas previously defined [in] the PDN." Def.'s Ex. 22.

Despite Larbi's improvements, Connor received further complaints about her performance and issued her a "memo of concern" on January 8, 2009. The memo of concern noted several problems "related to [her] previous PDN," including that a patient had complained, Larbi would not respond to pages, she became argumentative with a

4

nurse over ordered lab tests, and she refused to draw blood for a requested lab test before her shift ended. Def.'s Ex. 23. The memo of concern again reminded Larbi that "[a]ny further occurrences or policy violations may result in further corrective action up to and including termination." *Id.*

In April and May 2009, Connor received four separate complaints about Larbi sleeping at work and failing to check her pages. Around the same time, Larbi filed a complaint with Advocate Christ's human resources department in which she alleged that Connor was harassing her. The complaint was assigned to Terri Sisler, a human resources employee. As part of her investigation into Larbi's complaint, Sisler spoke with Connor regarding Larbi's allegations, reviewed documentation of employee complaints about Larbi's performance, examined employee statements about Larbi sleeping, and examined Larbi's draw logs and pager records.

On May 19, 2009, Larbi met with Sisler and Connor for several hours to discuss issues regarding Larbi's performance and to review her log sheets. According to Connor, Larbi was unable to offer any explanation for late blood draws and other performance deficiencies. Connor then terminated her.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and [that] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

5

(1986). Summary judgment must be granted "[i]f no reasonable jury could find for the party opposing the motion." *Hedberg v. Ind. Bell. Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

Advocate Christ has moved for summary judgment on four grounds: (1) Larbi cannot establish a discrimination claim under Title VII or the ADEA; (2) Larbi cannot establish a retaliation claim under Title VII or the ADEA; (3) Larbi cannot prevail on her FLSA and IMWL wage claims; and (4) Larbi is not entitled to punitive damages under Title VII or liquidated damages under the FLSA or the ADEA.

**I.      Discrimination claims**

A plaintiff may prove a claim of discrimination by either the direct or indirect method. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Because Larbi pursues this claim under both methods, the Court considers each one in turn.

**A.      Direct method**

Under the direct method of proof, a plaintiff may avoid summary judgment by presenting evidence, either direct or circumstantial, from which a reasonable jury could find that the employer's discrimination motivated the adverse employment action of which she complains. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). Direct evidence is "an outright admission that an action was taken for discriminatory reasons." *Everett v. Cook Cnty.*, 655 F.3d 723, 729 (7th Cir. 2011). Circumstantial evidence is "evidence that points to discriminatory animus through a longer chain of inferences," *id.*, and sets out a "convincing mosaic of discrimination." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). Such evidence generally falls into one of three categories:

6

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments direct at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employer offered a pretextual reason for the adverse employment action.

*Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011); *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114-15 (7th Cir. 2009); *see also Atunus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (stating that under the direct method, a plaintiff can establish discrimination under Title VII and the ADEA through circumstantial evidence).

Larbi contends that she has offered circumstantial evidence of discriminatory intent in her termination. Larbi summarizes her circumstantial evidence argument as follows:

> [Connor] decided not to rotate Larbi as a lead phlebotomist, failed to report to Human Resources Larbi's complaints that she was being discriminated against because she is foreign, did not follow Advocate's progressive discipline policy and fired Larbi without first obtaining approval from Human Resources and within only one month after Larbi reiterated previous complaints about Connor.

Pl.'s Br. at 11-12. The evidence Larbi cites, however, would not permit a reasonable jury to find that Connor terminated her due to her race, national origin, color, or age.

First, the failure to put Larbi in the lead phlebotomist position is simply another claimed instance of adverse treatment, not evidence of discriminatory animus. Larbi offers no evidence that she was singled out in this regard, let alone evidence that Connor treated others outside her protected classes differently. Larbi's contention that Connor's firing of another African-American woman over fifty-nine years old is likewise misplaced. There is no basis to infer from this that Connor targeted such persons for termination without some form of comparative evidence, which Larbi has not offered. *See Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 305 (7th Cir. 1996)

7

(finding evidence that the mere fact that five other employees within the protected class were also fired is insufficient to prove age discrimination against the plaintiff).

Second, though Connor terminated Larbi within one month after Larbi complained about her to human resources, this does not suggest discriminatory animus. A connection with a general complaint about harassment or adverse treatment, as opposed to a complaint citing race, national origin, color, or age, does not support an inference of discrimination. *See Marshal v. Am. Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir. 1998) (finding that suspicious timing does not suggest discrimination without evidence connecting plaintiff's protected status to defendant's decision to terminate her).

Third, Larbi's contention that discriminatory animus is shown by Connor's failure to get human resources' approval is likewise misplaced. As Larbi herself characterizes the evidence in this regard, "the practice at Advocate [Christ] was that [Connor] needed to consult or 'huddle' with human resources before a decision to terminate an employee is made." Pl.'s Br. at 10. But Connor *did* consult with human resources. The record reflects that Connor made the decision to terminate Larbi with and in the presence of Terri Sisler after they discussed Larbi's performance issues.

Fourth, Larbi argues that Connor did not follow Advocate Christ's progressive discipline policy, in that she put Larbi on a PDN without first issuing a level two or three CAN. But Connor testified, and Larbi does not dispute, that the disciplinary "policy allows for a manager and HR to make a decision to put an associate on a performance deficiency notice at any time during [a] progressive action" and that she therefore "did not have to follow that level because [she] had the option of putting [Larbi] on a PDN."

8

Connor Dep. at 111. Connor was somewhat vague about how the "memo of concern" that she issued to Larbi in January 2009 fits into Advocate Christ's disciplinary policy, but this trivial irregularity – assuming that is what it is – does not point toward the sort of deviation from disciplinary norms that might signal discriminatory animus. It is undisputed that the PDN that Connor issued in June 2008 remained in effect for a year and that it was understood that Larbi's failure to meet the expectations the PDN described could lead to her termination. Connor issued the memo of concern well within the one-year period, and Larbi offers no evidence that Connor did not honestly believe the performance deficiencies referenced in the memo.

Finally, the Court assesses Larbi's contention that Connor deviated from Advocate Christ's policies when she failed to report to human resources Larbi's statement that Connor did not like her because "she is foreign." *Id.* at 197-98. Advocate Christ's policies require management to "immediately report any incidence of alleged harassment to the human resources department." Pl.'s Ex. 3 at 39. It is less than clear that Larbi's complaint that Connor did not like her constituted a complaint about "harassment." But even if it did, there is no indication that Connor buried the complaint or anything close to it. Rather, it is undisputed that Connor documented the complaint in Larbi's personnel file.

Taking together the evidence that Larbi cites as circumstantial evidence of discrimination, no reasonable jury could find that it amounts to anything close to the sort of "convincing mosaic of discrimination" contemplated by Seventh Circuit precedent. Put another way, no reasonable jury could find that it "points directly to a discriminatory

9

reason for the employer's action." *Silverman v. Bd. of Educ. of Chicago*, 637 F.3d 729, 734 n.3 (7th Cir. 2011) (citation and internal quotation marks omitted).

**B.     Indirect method**

To establish a prima facie case under the indirect method, a plaintiff must present evidence that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated individuals who were not in the protected class. *Coleman*, 667 F.3d at 845.

The parties dispute whether Larbi was meeting Advocate Christ's legitimate expectations and whether she was treated less favorably than similarly situated employees that were younger and not African-American. The Court need not address whether Larbi met Advocate Christ's legitimate expectations because she has failed to identify anyone outside her protected classes who was treated better than her.

In claiming that younger, non-African-American employees were treated better, Larbi points only to the fact that Connor fired another African-American woman over the age of fifty-nine. As the Court indicated earlier, this by itself is not evidence of less favorable treatment. Rather, Larbi would have to identify a younger, non-African-American who was not terminated despite similar performance deficiencies. Because Larbi has not done this, she cannot make out a prima case of discrimination under the indirect method.

**II.     Retaliation claim**

Larbi also claims that Advocate Christ retaliated against her in violation of Title VII and the ADEA when it terminated her in 2009. A plaintiff may prove retaliation using

10

either the direct or indirect method of proof. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). To survive summary judgment under the direct method, Larbi must establish an issue of material fact that (1) she engaged in activity protected under the applicable statute; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). Larbi proceeds only under the direct framework.

The parties dispute the first and third elements of the direct method analysis – whether Larbi engaged in protected activity and whether there is evidence of a causal connection between that activity and her termination. With respect to the first issue, Larbi claims that she "clearly engaged in a protected activity when she complained to human resources in April 2009 about Connor because she felt harassed." Pl.'s Br. at 16. Larbi cites her deposition testimony that she told Terri Sisler she was being harassed. But Larbi testified that when Sisler asked her "[w]hat kind of harassment" she was experiencing, she stated only that it consisted of Connor going to patients' rooms and to nurses and asking them about her performance. Larbi Dep. at 207-08. Thus Larbi's own testimony reflects that she did not suggest to Sisler that she was experiencing discrimination or harassment on the basis of race, color, national origin, or age. A general complaint of this sort does not constitute protected activity. *See Tomanovich*, 457 F.3d at 663; *Miller v. Am. Fam. Mut. Ins.*, 203 F.3d 997, 1008 (7th Cir. 2000) (plaintiff did not engage in protected activity because "[h]er complaints instead concerned a general displeasure with being paid less than her co-workers" and not discrimination related to a protected class).

11

Larbi did, however, engage in protected activity in March 2008 when she directly expressed her concerns to Connor that Connor did not like her because "she is foreign." Connor Dep. at 197-98. Advocate Christ argues that such a complaint is too vague because whether Connor "liked" Larbi is not conduct prohibited by Title VII. The Court disagrees. It is relatively clear that although Larbi did not specifically cite "discrimination," she was complaining about what she viewed as Connor's discriminatory behavior based on national origin. Viewing the evidence in the light most favorable to Larbi, she has established a genuine issue of material fact that she engaged in statutorily protected activity.

The causation element requires Larbi to prove that a causal connection exists between her complaint and her termination, either by showing an admission of retaliation or by "presenting a convincing mosaic of circumstantial evidence" that allows a jury to infer retaliation. *Coleman*, 667 F.3d at 860 (citation and internal quotation marks omitted). Under the "convincing mosaic" analysis, courts have recognized three categories of evidence that may allow a rational jury to infer unlawful retaliation. *Id.* The first includes "suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012). The second category is evidence showing that "the employer systematically treated other, similarly situated, [non-protected] employees better." *Silverman*, 637 F.3d at 734 (citation and internal quotation marks omitted). Finally, a plaintiff may show that the employer offered a pretextual reason for an adverse employment action. *Coleman*, 667 F.3d at 860.

Larbi relies on the fact that she was terminated within one month of complaining to human resources about Connor. The Court has concluded, however, that this complaint did not amount to protected activity. Larbi must therefore provide evidence from which a reasonable jury could find a causal connection between her March 2008 complaint to Connor and her termination in May 2009.

The Seventh Circuit has found "that a year is too long in the absence of any other evidence tying the protected activity to the adverse action." *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471 (7th Cir. 2010). Larbi concedes this but argues that other evidence exists to establish causation. Specifically, Larbi says that Connor made the ultimate decision to fire her, did not obtain approval from human resources in doing so, and has admitted to having a "good thought that she was going to fire [Larbi]" prior to firing her. Larbi Dep. at 99. The record reflects, however, that although Connor made the ultimate decision to terminate Larbi, she did so in the presence of and with Sisler, after the two of them reviewed and discussed Larbi's log sheets and pager records. Moreover, though Connor testified that she anticipated firing Larbi, she also stated that she would not have fired Larbi had she been able to explain why she was unable to meet various expectations. She stated that "termination was an option," one that she "would have reconsidered" had Larbi been able to explain for her untimeliness, failure to return pages, and other performance-related inconsistencies. Connor Dep. at 99-101.

In sum, no reasonable jury could find that the evidence Larbi cites amounts to a "convincing mosaic" of evidence that would permit an inference of retaliation for her complaint to Connor. For this reason, Advocate Christ is entitled to summary judgment on Larbi's retaliation claim. Because the Court has granted summary judgment against

13

Larbi on her claims under Title VII and the ADEA, the Court need not separately address Advocate Christ's arguments concerning her requests for punitive and liquidated damages under those statutes or the issue of mitigation of damages.

### III.     FLSA and IMWA claims

The FLSA's governing regulations provide that an employer is responsible for paying an employee for time worked only "[i]f the employer knows or has reason to believe that the work is being performed." 29 C.F.R. § 785.12. Thus, to sustain a claim under the FLSA, a plaintiff must show that the employer had actual or constructive knowledge of her overtime work. *Keller v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011). Because the IMWA incorporates FLSA standards by reference, the Court considers Larbi's claim for overtime wages under the FLSA and IMWA together. *See Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993).

Advocate Christ argues that no reasonable jury could find that it had actual or constructive knowledge that Larbi was working during her lunch break. It says that Larbi was never expected to work off the clock and was "expected and encouraged to take an uninterrupted thirty-minute meal break" pursuant to Advocate Christ's policy and contends that Larbi was fully capable of pressing the "no lunch" button when she was unable to take an uninterrupted meal break. Def.'s Opening Br. at 14. Advocate Christ also contends that it had no reason to know that Larbi did not take meal breaks because Connor investigated Larbi's log sheets and concluded that the large gaps of time between draws that she performed would have permitted her to take her meal break.

Advocate Christ's arguments do not show the absence of a genuine factual dispute. It is undisputed that Larbi told Connor in a number of e-mails and handwritten

notes that she was unable to take her meal breaks. This evidence is sufficient to permit a reasonable jury to find that Advocate Christ was on notice that Larbi was working through her break. Though Connor chose not to believe Larbi, and though a jury may follow suit, the Court cannot resolve this dispute on summary judgment.

**IV.    FLSA liquidated damages**

An employer who violates the FLSA's overtime provisions "shall be liable to the employee . . . in the amount of their unpaid overtime compensation . . . and in an additional amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages may be denied, however, if the employer, acting in good faith, reasonably believed that its conduct was consistent with the law. 29 U.S.C. § 260. Advocate Christ argues that it exercised good faith and had a reasonable belief that Larbi was not entitled to overtime pay.

There is "a strong presumption in favor of doubling . . . . Double damages are the norm, single damages the exception, the burden on the employer." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986). The employer's burden to avoid liquidated damages is "substantial." *Bankston v. State of Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995). Given the burden it bears on this issue, Advocate Christ is not entitled to entry of summary judgment denying liquidated damages.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 77] on plaintiff's claims of discrimination and retaliation (Counts 1, 2, and 5 of her second amended complaint) but denies the motion on her FLSA and

15

IMWA claims (Counts 3 and 4). The case is set for a status hearing on December 12, 2012, at 9:30 a.m. to set a trial date and discuss the possibility of settlement.

                                                                          MATTHEW F. KENNELLY
                                                                          United States District Judge

Date: December 3, 2012